FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

2008 DEC 17 PM 1:47

U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

REID A. STEWARD,

           Plaintiff,

vs.                                                           Case No. 2:05-cv-342-FtM-SPC

DON HUNTER, CHRIS FREEMAN, RICHARD SCAMMON,

           Defendants.

_____

## OPINION AND ORDER

### I.

This matter comes before the Court upon review of the Motions for Summary Judgment, filed on behalf of Defendant Freeman (Doc. #79, Freeman Mot. SJ) and Defendant Hunter (Doc. #80, Hunter Mot. SJ).[1] In support of their respective motions, Defendants filed the following identical exhibits (Docs. #79-2, #80-2) to each motion: Plaintiff's allegation of member misconduct form received September 24, 2004 (Exh. A); Collier County Sheriff's Office of Professional Responsibility Bureau Investigative Summary (Exh. B); Emails from Jail Administration concerning incident (Exh. C); Memo from Hunter Withdrawing Scammon's Appointment (Exh. D); and, Affidavit of Chris Freeman (Exh. E). Plaintiff filed a consolidated Response (Doc. #90, Response) to the Defendants' motions, and attached the response to his interrogatories from Defendants Hunter and Freeman (Doc. #90-2, Pl's Exhs. A, B) as exhibits. This matter is ripe for review.

---

[1] Pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, and the consent of the parties, the undersigned is the presiding judge. See Order at Doc. #94.

II.

Plaintiff, who is proceeding *pro se*, initiated this action by filing a Civil Rights Complaint Form (Doc. #1, Complaint) pursuant to 42 U.S.C. § 1983. Plaintiff, in general, alleges his constitutional rights were violated while he was in the custody of the Collier County Jail stemming from an incident where Defendant Scammon[2] planted contraband, specifically a handcuff key, in his cell. See Complaint. Plaintiff claims that the "jail administration" suspected Scammon of committing similar unlawful acts against other inmates, but nevertheless permitted Scammon to continue working at the jail. Id. at 10.

The "Jail Administration" Defendants, Freeman and Hunter, argue they are entitled to judgment as a matter of law. In pertinent part, Defendants argue they were not deliberately indifferent to Plaintiff's constitutional rights as they were not ever aware of the need to correct Scammon's behavior "as it applied to planting contraband in inmate's cells." Hunter Mot. SJ at 3; Freeman Mot. SJ at 2. Alternatively, Defendant Hunter argues that he is entitled to qualified immunity. Id.

III.

With respect to the standard for granting summary judgment, the Eleventh Circuit Court of Appeals has stated:

> [S]ummary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986).

In re Optical Technologies, Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). "A factual dispute alone is not sufficient to defeat a properly pled motion for summary judgment." Teblum v. Eckerd Corp. of Fla.,

---

[2] On October 16, 2008, the Court granted Defendant Scammon's Motion to Stay under the Soldiers' and Sailors' Civil Relief Act, thereby staying this action against Defendant Scammon only. See Order at Doc. #93.

Inc., Slip Copy, 2006 WL 288932 *1 (M.D. Fla. 2006). "Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment." Lofton v. Sec. Dept. Children and Family Services, 358 F.3d 804, 809 (11th Cir. 2004). The moving party bears the burden of demonstrating to the Court that based upon the record no genuine issues of material fact exists that should be decided at trial. Hickson Corp. v. Northern Crossarm Co., Inc., 357 F.3d 1256, 1260 (11th Cir. 2004)(citing Celotex, 477 U.S. at 323). "When a moving party has discharged its burden, the non-moving party must 'then go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593-94 (11th Cir. 1995)(citing Celotex, 477 U.S. at 324).

"It is true that on a motion for summary judgment, all reasonable inferences must be made in favor of the non-moving party." Cuesta v. School Bd. of Miami-Dade County, 285 F.3d 962, 970 (11th Cir. 2002) (citation omitted). "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Id. (citations omitted). Additionally, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." Burger King Corp. v. Weaver, 169 F.3d 1310, 1321 (11th Cir. 1999)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)). Where, however, there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true. Shotz v. City of Plantation, Fla., 344 F.3d 1161, 1164 (11th Cir. 2003).

The undisputed facts are as follows: On September 15, 2004, Defendant Scammon escorted Plaintiff from his cell to the visitation area during visitation time. Complaint at 6; Hunter Mot. SJ at 3; Freeman Mot. SJ at 3. While Plaintiff was out of his cell, Defendant Scammon planted a handcuff key

in a slice of cake left inside Plaintiff's cell. Complaint at 6-7; Hunter Mot. SJ at 6; Freeman Mot. SJ at 6; Exhs. A, B. After approximately one hour of visitation time, Defendant Scammon escorted Plaintiff from the visitation area back to his cell and told Plaintiff that he found a handcuff key, which is contraband, in the cake in Plaintiff's cell during a search. Complaint at 7; Hunter Mot. SJ at 4; Freeman Mot. SJ at 4. The following day, Defendant Scammon and two other officers, who are not named Defendants, arrived at Plaintiff's cell to escort Plaintiff to the booking department for Plaintiff to be formally charged with introducing contraband into a correctional facility. Id. Plaintiff admits that he initially refused to leave his cell, but eventually complied with the officers' orders. Complaint at 8; Hunter Mot. SJ at 4; Freeman Mot. SJ at 4. During that time, Defendant Scammon sprayed Plaintiff with multiple bursts of pepper spray.³ Id. The Collier County Sheriff's Department's Professional Responsibility Bureau (hereinafter "PRB") conducted a criminal investigation of Scammon based on the following series of incidents:

> **September 7, 2004-** Scammon found a handcuff key in the jail's laundry room.
>
> **September 8, 2004-** Scammon found an "improvised weapon ("shank")" in the jail's kitchen.
>
> **September 15, 2004-** Scammon discovered a handcuff key in inmate Steward's cell.
>
> **September 16, 2004-** Deputy Louis Lopez found a 9mm bullet in jail's laundry room based on information relayed to him by Scammon.

See Exh. B. After the conclusion of the investigation by the PRB on October 18, 2004, Defendant Hunter withdrew Scammon's appointment as a jail deputy. Complaint at 10; Hunter Mot. SJ at 6; Freeman Mot. SJ at 6; Exha. B, D.

---

[3] Plaintiff claims the spray was used while he was complying with Scammon's orders. This is an issue of fact with regard to only Defendant Scammon.

The disputed facts regarding Hunter and Freeman are as follows: Plaintiff alleges that, at the time of the incident complained of, Defendants Hunter and Freeman "suspected" Defendant Scammon of committing similar unlawful acts against other inmates, but nevertheless permitted Scammon to continue working at the jail. Complaint at 10. Defendant Hunter contends that he first received an email regarding the incident involving Plaintiff the morning **after** the incident occurred. Hunter Mot. SJ at 7; Exh. C. Defendant Freeman states that he was informed by Commander Joe Bastys that Scammon had discovered a handcuff key in Plaintiff's cell. Freeman Mot. SJ. at 6. Defendant Freeman asserts that "it was this discovery of a second handcuff key in a short period of time which caused Defendant Freeman to be concern[ed]." Id. The day after the contraband was found in Plaintiff's cell, September 16, 2004, Defendant Freeman and Bastys decided that an investigation into Scammon's conduct was necessary. Id. Once the decision to conduct an investigation was made, Greg Smith emailed the PRB that same day regarding Scammon's behavior, and, at that time, copied Defendant Hunter on the email for the first time. Id. at 6-7.

As supervisors, liability on Defendants Freeman and Hunter can be imposed under § 1983 "either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between the actions of the supervising official and the alleged constitutional deprivation." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990). Absent personal participation by Defendants Hunter and Freeman, Plaintiff must show an affirmative causal connection between their acts and the alleged constitutional deprivation. Harris v. Ostrout, 65 F.3d 912, 917 (11th Cir. 1995). The causal connection can be established "when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so [,]" or when a custom or policy of the supervisor results in deliberate indifference to constitutional rights. Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003) (quoting Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir.

2003)). "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences." Brown, 906 F.2d at 671. Alternatively, facts supporting an inference that the supervisor directed the subordinates to act unlawfully or knew that they would do so and failed to stop them establishes a causal connection. Cottone, 326 F.3d at 1360 (quoting Gonzalez, 325 F.3d at 1234) (remaining citations omitted). In the case *sub judice*, the Complaint does not allege, nor does the record suggest, that Defendants Hunter and Freeman were personally involved in planting the contraband in Plaintiff's cell. The record is clear Defendant Scammon acted alone in planting the contraband in Plaintiff's cell. See Complaint; Exhs. A-B. With the absence of Defendants Hunter and Freeman's personal participation in the alleged incident, Plaintiff must demonstrate that Defendants Hunter and Freeman had a causal connection to the incident. Plaintiff argues that Defendants Hunter and Freeman "had knowledge of Defendant Scammon's felonious conduct planting contraband within the jail and yet continued to allow Scammon to work at the jail until his dismissal." Response at 3, 7. Plaintiff also argues that Defendants Freeman and Hunter were "deliberately indifferent" to his constitutional rights by permitting Scammon "to continue working at the jail until the incident occurred involving Plaintiff." Id. at 7-8.

The record evidence demonstrates without contradiction that Defendant Hunter did not know Scammon had been planting contraband in the jail. See Pl's Exh. A (denying any knowledge regarding incidents when Scammon found contraband); Exhs. A, B, C. Defendant Hunter was first informed of Scammon's conduct by an email sent to Hunter on September 16, 2008, from Chief Greg Smith, the day **after** contraband was found in the Plaintiff's cell. Exh. C. That same day, the PRB began an investigation of Scammon. The PRB's investigation included interviews of jail staff, an interview of Scammon, and a lie detector test of Scammon. Exh. B. On September 24, 2004, Scammon was

suspended without pay pending the conclusion of the investigation.[4] Id. Upon conclusion of the investigation, when Defendant Hunter learned that Scammon had planted contraband in the jail, he immediately terminated Scammon's employment.[5] Exh. D.

Defendant Freeman acknowledges that he was aware of Scammon's previous contraband discoveries in the jail, which occurred earlier in the month of September 2004, but notes that these incidents did not involve inmates. Freeman Mot. SJ at 7. Defendant Freeman further attests that he did not suspect Scammon of any bad acts, until Scammon discovered the contraband in Plaintiff's cell. Freeman Mot. SJ at 7. Without delay, Defendant Freeman made the necessary contacts through the chain of authority to initiate an investigation into Scammon's conduct. In fact, the PRB investigation began almost a week earlier than the date the jail administration received Plaintiff's Allegation of Member Misconduct form.[6] Exh. A. Nevertheless, it was through the PRB's investigation that Defendants Hunter and Freeman became aware of Scammon's act of planting evidence in Plaintiff's cell, resulting in Scammon's termination from employment with the jail. Based on the record before the Court, there remains no issue of material fact as to Defendants Hunter and Freeman and they are entitled to judgment as a matter of law.

ACCORDINGLY, it is hereby

**ORDERED**:

1. Defendant Freeman's Motion for Summary Judgment (Doc. #79) is **GRANTED**.

---

[4] A polygraph of Scammon was conducted on September 24, 2004. Exh. B. After the polygraph, Scammon admitted planting the contraband in Plaintiff's cell. Id. Consequently, Scammon was immediately suspended without pay.

[5] The investigation concluded within one month.

[6] Plaintiff's form was received on September 24, 2004.

2. Defendant Hunter's Motion for Summary Judgment (Doc. #80) is **GRANTED**.

3. The Clerk of Court shall enter judgment in favor of Defendants Freeman and Hunter and administratively close this case.

4. Pursuant to the Court's October 16, 2008 Order (Doc. #93), this action remains stayed as to Defendant Scammon and counsel for Defendant Scammon **must** file a notice with the Court every six (6) months regarding his status.

**DONE AND ORDERED** in Fort Myers, Florida, on this 17th day of December, 2008.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

SA: alj
Copies: All Parties of Record